# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 9, 2013

Lyle W. Cayce
Clerk

No. 13-40198
Summary Calendar

HARRY W. STURGES, IV,

Plaintiff - Appellant

v.

SUNTRUST MORTGAGE, INCORPORATED,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 3:11-CV-396

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Harry Sturges appeals the district court's granting summary judgment for Suntrust Mortgage against his claims for wrongful foreclosure, quiet title, trespass to quiet title, and related declaratory judgment. The district court concluded Sturges did not show a genuine dispute as to any material fact supporting his wrongful-foreclosure claim, and as a result his other claims necessarily failed as well. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40198

The facts underlying this action are largely undisputed.  To the extent there is a dispute, the facts are presented in the light most favorable to Sturges as the non-moving party, as is required when reviewing a summary judgment. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 313-14 (5th Cir. 2007).

In 2007, Sturges purchased a home in Galveston, Texas, with the intent to make it his principal residence and homestead.  To finance this purchase, he received two loans from SunTrust.  Neither loan included an escrow agreement, meaning Sturges was responsible for paying all taxes relating to the property directly to the proper authorities.  In 2009, Galveston County initiated an action against Sturges to collect unpaid taxes.  Sturges defended the suit, claiming he never received a tax bill and did not owe the taxes in any event.

Despite Sturges' continuing defense, in January 2010 SunTrust intervened and paid the allegedly outstanding taxes.  Having thus disposed of the tax dispute, SunTrust then increased the amount of Sturges' monthly payments on one of his loans so as to recoup the amount of tax paid.  As a result, SunTrust demanded $31,169.55 from Sturges in January 2011, as compared to his previous monthly liability of $10,040.30.  When Sturges failed to pay the increased amount, and after allowing him 30 days to cure his default, SunTrust notified Sturges that the loan had been accelerated and the property would be sold at a foreclosure sale in June 2011.  Despite the foreclosure sale's proceeding as planned, Sturges maintains possession of the property.

Sturges filed this action in state court in August 2011, and SunTrust immediately removed to federal court.  Sturges claimed SunTrust had wrongfully foreclosed on the property, trespassed quiet title (or, in the alternative, Sturges sought to quiet title in the property), and sought declaratory judgment on these issues. The district court concluded, *inter alia*, SunTrust had not breached the controlling deed of trust when it paid the disputed taxes on the

property and added the total to Sturges' loan amount.  Therefore, SunTrust had not wrongfully foreclosed on the property.  The court granted summary judgment for SunTrust because Sturges' other claims could not succeed without his wrongful-foreclosure claim.

Summary judgment is reviewed *de novo*, and we apply the same standard as the district court. *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013).  Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All evidence is viewed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in that party's favor. *Jenkins*, 487 F.3d at 313-14.

Sturges argues primarily that, under the terms of the deed of trust, SunTrust did not have the right to unilaterally pay the disputed taxes and add the tax liability to his loan amount.  Sturges claims this action constituted a breach of the deed of trust, and the resulting foreclosure was therefore wrongful and unjustified.  He contends the controlling section of the deed of trust is Section Four, which provides that Sturges "shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over" the SunTrust loan.  Section Four continues:

> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying

the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

The other relevant section of the deed of trust is Section Nine, which provides:

> If (a) Borrower fails to perform the covenants and agreement contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting, and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . . Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Under Texas law, a deed of trust is interpreted using the same rules as those applied to contracts. *Fin. Freedom Sr. Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. Ct. App. 2009). Our task is to "ascertain the true intentions of the parties as expressed in the instrument," seeking specifically their *objective* intent by "consider[ing] the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will

No. 13-40198

be rendered meaningless." *Id.*; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In addition, where terms in a contract appear to conflict, "terms stated earlier in an agreement must be favored over subsequent terms." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Based on these rules of interpretation, Sturges asserts Section Four of the deed of trust should control. Not only does it deal specifically with "taxes," whereas Section Nine deals generally with legal proceedings and liens, but Section Four also appears earlier in the writing. Considering the further, well-known rule that ambiguities in an instrument should be construed against the drafter, and the deed of trust is a uniform document used by several banks, Sturges maintains he was within his rights under Section Four to contest the tax suit without interference from SunTrust. In other words, because he "contest[ed] the lien in good faith," Section Four absolved him of any responsibility under the deed of trust to pay the allegedly owed taxes; SunTrust's intervention deprived him of his right to contest his tax liability and forced him to pay the taxes in a lump sum to SunTrust, which he was unable to do.

However, Sturges' preferred reading of the deed of trust requires assuming ambiguity or conflicting terms, where neither exists. As the district court explained, Sections Four and Nine can both be given their full meaning without reducing the strength of either. While Sturges asserts the best way to harmonize all terms of the agreement is to find Section Nine inapplicable to tax suits and tax liens, there is no reason both Section Four's specific language and Section Nine's general language cannot apply to such situations. As the district court noted, both sections use the permissive "may" in laying out SunTrust's remedial options: under Section Four, it may provide notice and require borrower to take an approved action to satisfy or contest the lien outranking SunTrust's; under Section Nine, it may, *inter alia*, "pay[] any sums secured by a lien which has priority over this Security Instrument." These two options do

5

not conflict with each other, and are not ambiguous.  SunTrust had the right to take action under either Section Four or Section Nine–or, if it preferred, neither–and chose Section Nine.

Our conclusion is further supported by two other textual features of the agreement.  First, language in Sturges' preferred Section Four allows him, as the borrower, to contest a tax suit in a manner that "*in Lender's opinion* operate[s] to prevent the enforcement of the lien while those proceedings are pending," (emphasis added).  SunTrust's decision to intervene and pay the taxes illustrates that it was not of the opinion that Sturges' defense against the tax suit had the effect of preventing the tax lien's enforcement.

Second, by its terms Section Four applies where there is "any lien" on the property with priority over the agreement.  While the taxing authorities were suing Sturges for unpaid taxes, they had not yet obtained a judgment granting them a lien on the property.  By contrast, Section Nine applies, *inter alia*, where "there is a legal proceeding that might significantly affect Lender's interest in the rights under this Security Instrument."  The tax suit clearly fits under that umbrella, and Section Nine is therefore more applicable to Sturges' situation than is Section Four.

Before the district court, Sturges argued further that he had not received the required notice from SunTrust before it foreclosed, and that SunTrust misled him as to a potential loan modification.  He has waived both contentions by failing to brief them. *E.g.*, *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).  Because SunTrust acted within its rights under the deed of trust by paying Sturges' allegedly delinquent taxes and adding the total to his loan amount, its subsequent foreclosure upon Sturges' failure to pay the increased amount was not wrongful.

AFFIRMED.